IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| ERIC L. DIAMOND, ) | |
|     Petitioner, ) | |
| ) | Civil Action No. 7:18-cv-00580 |
| v. ) | |
| ) | By: Elizabeth K. Dillon |
| HAROLD W. CLARKE, ) |     United States District Judge |
|     Respondent. ) | |

MEMORANDUM OPINION

Eric L. Diamond, a Virginia inmate proceeding *pro se*, filed a petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254,[1] challenging his criminal judgment entered by the Circuit Court of the City of Radford on July 21, 2016. This matter is before the court on respondent's motion to dismiss (Dkt. No. 10), to which Diamond has responded (Dkt. No. 15). After reviewing the record, the court will grant the motion and dismiss the petition as time barred.

On July 21, 2016, Diamond pleaded guilty pursuant to a plea agreement in which the Commonwealth agreed to *nolle pros* nine additional felony charges (Plea Agreement, Resp't Ex. 2, Dkt. No. 12-2). The City of Radford Circuit Court accepted his guilty pleas and entered a final order convicting him of rape, aggravated sexual battery, distribution of a Schedule IV drug to a minor, possession of child pornography, production of child pornography, and causing cruelty or injury to a child. (Conviction & Sentencing Order, Resp't Ex. 1, Dkt. No. 12-1.) He was sentenced to a total of seventy years in prison, with fifty-eight suspended, which was the sentence the parties had jointly recommended in the plea agreement. *Id.* Diamond did not appeal.

On December 14, 2017, Diamond filed a timely petition for writ of habeas corpus in the

---

[1] The court omits internal citations, alterations, and quotation marks throughout this opinion, unless otherwise noted. *See United States v. Marshall*, 872 F.3d 213, 217 n.6 (4th Cir. 2017).

Supreme Court of Virginia. (State Pet., SCV Rec. 1–37.)[2] That court granted the respondent's motion to dismiss and dismissed Diamond's petition on April 19, 2018. (SCV Op., Dkt. No. 12-3.) Diamond filed this petition on October 30, 2018. *See* R. Gov. § 2254 Cases 3(d) (describing the prison-mailbox rule).

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), a one-year statute of limitations applies when a person in custody pursuant to the judgment of a state court files a federal petition for a writ of habeas corpus. 28 U.S.C. § 2244(d)(1)(A)–(D); R. Gov. § 2254 Cases 3(c).

This statute of limitations runs from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1). Here, Diamond alleges nothing to support application of § 2244(d)(1)(B)–(D).

Under § 2244(d)(1)(A), Diamond's conviction became final, and the statute of limitations began to run, when his thirty-day period to file an appeal to the Court of Appeals of Virginia expired on August 22, 2016. *See* Va. S. Ct. R. 5A:6 (providing that a defendant has thirty day after entry of judgment to note an appeal). Therefore, Diamond had until August 22, 2017, to file a timely federal habeas petition. *See Hernandez v. Caldwell*, 225 F.3d 435, 439 (4th Cir.

---

[2] Paper copies of the records from the Supreme Court of Virginia and the Circuit Court of Radford, which are on file with the Clerk of this court, are referred to, respectively, as "SCV Rec." and "Trial Rec." (*See* Dkt. Nos. 16, 17.) The trial court record lacks page numbers, so the court instead describes the documents cited therein.

2000) (explaining calculation, as affected by Fed. R. Civ. P. 6(a)). He did not file any state petition or federal petition on or before that time.[3] Accordingly, if calculated under § 2244(d)(1)(A), his petition is not timely.

In his response to the motion to dismiss, Diamond concedes that his petition was not timely filed. (Resp. 2, Dkt. No. 15.) Accordingly, Diamond's petition is time barred unless he demonstrates that he is entitled to equitable tolling, *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003), or that he is actually innocent of his convictions, *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013). In his response opposing dismissal, he argues both of these grounds.

Equitable tolling is proper only in "those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *Rouse*, 339 F.3d at 246 (citing *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The petitioner must demonstrate that some action by the respondent or "some other extraordinary circumstance beyond his control prevented him from complying with the statutory time limit," despite his exercise of "reasonable diligence in investigating and bringing the claims." *Harris*, 209 F.3d at 330. An inmate asserting equitable tolling "bears a strong burden to show specific facts" demonstrating that he fulfills both elements of the test. *Yang v. Archuleta*, 525 F.3d 925, 928 (10th Cir. 2008). Generally, the petitioner is obliged to specify "the steps he took to diligently pursue his federal claims." *Id.* at 930.

Diamond seems to be asking for equitable tolling on the ground that he did not understand post-conviction proceedings, has a low IQ, and at some unspecified point was found incompetent to stand trial. (Resp. 2.) As to his first ground, ignorance of the law is no excuse,

---

[3] The running of the federal statutory period is tolled while a properly filed state habeas corpus proceedings is pending. *See* 28 U.S.C. § 2244(d)(2). Because Diamond did not file his state court habeas petition until after his federal filing period under § 2244(d)(1) expired, however, the state habeas proceedings did not toll the federal period.

and neither that ignorance nor his *pro se* status justifies equitable tolling. *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004) (denying equitable tolling and explaining that a *pro se* petitioner's "misconception about the operation of the statute of limitations is neither extraordinary not a circumstance external to his control").

It is unclear what evidence Diamond relies on for his claim of low IQ or incompetency. As a factual matter, the record before the court does not support his claim of a low IQ. For example, when he pleaded guilty to the convictions he now challenges, he indicated to the court that he had completed two years of college and that he understood all the questions asked of him (SCV Rec. 256, 264.) Furthermore, there is a psychological evaluation in the state trial court record that estimated his "intellectual ability" to be "in the average to high average range based on his past educational and work achievements and his interactions in this interview." (Oct. 9, 2015 Psych. Eval. at 4, Trial Rec.) The court found that Diamond's pleas of guilty were made "freely, voluntary, and intelligently" and that Diamond understood "the nature of his charges and the consequences of his pleas of guilty." (SCV Rec. 264.) Thus, he has not made an adequate factual showing of low IQ. *See also Allen v. Bell*, 250 F. App'x 713, 716 (6th Cir. 2007) (concluding that inmate who alleged he had a low IQ was not entitled to equitable tolling because he failed to "ma[ke] any factual showing of mental incapacity").

Even if Diamond could point to facts showing that he has a low IQ, though, the Fourth Circuit has explained that "equitable tolling as a result of a petitioner's mental condition" is only appropriate "in cases of profound mental incapacity." *Sosa*, 364 F.3d at 512. In so reasoning, *Sosa* cited to a Ninth Circuit case that referenced circumstances such as "institutionalization or adjudged mental incompetence." *Id.* (citing *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136, 1138 (9th Cir. 1998)). Diamond's unsupported allegation that he has a low IQ is not comparable the facts in *Grant*.

4

In any event, Diamond has failed to allege any facts showing how his "borderline mental retardation" prevented him from timely filing his petition. Thus, he is not entitled to equitable tolling. *See House v. Clarke*, No. 3:16CV238, 2017 WL 990580, at *4 (E.D. Va. Mar. 14, 2017) (rejecting equitable tolling where petitioner failed to "allege any facts showing" how his mental condition prevented him from timely filing and collecting authority holding same).

Similarly, as to Diamond's alleged incompetency, he has not pointed to any portion of the record or other evidence that he was found incompetent at any time; he simply says the information is in the "court record."[4] Critically, moreover, there is no evidence that he was found incompetent at the time of his guilty pleas and sentencing or in the period in which he should have filed his petition. Instead, a competency evaluation was requested and performed in this case, but the evaluator found him to be competent. (Oct. 9, 2015 Psych Eval. At 6, Trial Rec.) And again, in accepting Diamond's pleas, the trial court found that the pleas "were made freely, voluntarily, and intelligently" and "that [Diamond] understands the nature of his charges and the consequences of his pleas of guilty." (SCV Rec. 264.)

Nor does Diamond explain how any prior incompetency excuses his untimely filing. In short, Diamond has not even alleged, let alone shown, that any action by the Commonwealth or "some other extraordinary circumstance beyond his control" prevented him from complying with the statutory time limit. *See Harris*, 209 F.3d at 330. For all of these reasons, he is not entitled to equitable tolling.

The last possibility for Diamond to overcome a time-bar restriction is a gateway claim of actual innocence, which Diamond states is his "central argument" as to timeliness. (Reply 2, Dkt. No. 15.) To succeed on an actual innocence claim, a petitioner must produce new, reliable

---

[4] Diamond's counsel moved the court for a competency evaluation, to which the Commonwealth objected. Ultimately, the court ordered that a competency evaluation be completed. That evaluation, however, found Diamond to be competent. The record does not reflect any request by Diamond that he be found incompetent nor any finding of incompetency by the court.

evidence sufficient to persuade the court that no reasonable juror would have found the petitioner guilty beyond a reasonable doubt. *McQuiggin*, 569 U.S. at 386 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). "Habeas corpus petitions that advance a substantial claim of actual innocence are extremely rare." *Schlup*, 513 U.S. at 321. The standard for showing actual innocence is thus a demanding one, and the delay in the filing of the petition "is a factor bearing on the 'reliability of the evidence' purporting to show actual innocence." *McQuiggin*, 569 U.S. at 386 (quoting *Schlup*, 513 U.S. at 332). A showing of actual innocence to allow one to pass through the *Schlup* gateway and avoid the statutes of limitations bar to review, must be a showing of "factual innocence," not legal innocence or evidentiary insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998); *Rozzelle v. Sec'y, Fla. Dep't of Corr.*, 672 F.3d 1000, 1013 (11th Cir. 2012).

Additionally, where a defendant pled guilty to the state crime—as Diamond did here—instead of being convicted after a trial, it is even more difficult to show "actual innocence." While pleading guilty does not entirely preclude a petitioner from claiming actual innocence in a habeas proceeding, a guilty plea "seriously undermine[s]" the claim. *Smith v. Warden*, No. 7:17CV00072, 2018 WL 3130948, at *2 (W.D. Va. June 26, 2018); *Clark v. Clarke*, No. 7:14CV00042, 2017 WL 819500, at *4 (W.D. Va. Mar. 1, 2017). Guilty pleas also give rise to several issues under *Schlup*: there is no factfinder (judge or jury) finding, the record is normally abbreviated, the state did not "present" evidence in the typical fashion to establish guilty beyond a reasonable doubt, and the petitioner has confirmed his guilt in a plea colloquy. *Smith*, 2018 WL 3130948, at *3.

Diamond fails to satisfy the demanding standard for an actual innocence gateway claim. First of all, it is not entirely clear what "new evidence" Diamond contends shows his innocence. His petition alleges that his counsel was constitutionally deficient and that he would not have pled guilty had his counsel properly advised him of the consequences of his plea, including the

6

possibility for a lifetime of civil commitment, under Virginia Code § 37.2-900 (Pet.'s Opp'n 5, Dkt. No. 15.)[5] But this claim does not depend on new evidence. Moreover, as the Supreme Court of Virginia noted in rejecting his ineffective assistance claim related to his guilty pleas, Diamond's statements at the plea colloquy flatly contradict his claim that his guilty pleas were involuntary or unknowing. *Diamond v. Clarke*, No. 171754, slip op. at 2–3 (Va. Sept. 7, 2018), attached as Resp't Ex. 3, Dkt. No. 12-3.) Indeed, his counsel offered him the option to try to withdraw his guilty pleas after sentencing—based on the prosecutor's failure to disclose pertinent information—the record reflects that Diamond elected not to do so. (*Id.*) He also received the benefit of the prosecution *nolle prossing* nine additional felony charges and an agreed-upon, active sentence of twelve years, very far below his maximum sentencing exposure.

Aside from the voluntariness of his plea, the crux of Diamond's "actual innocence" claim is focused on two assertions. First, as relevant to his rape and aggravated sexual battery convictions, he argues that the victim was in fact a willing participant in the sexual act. For support, he points to text messages from her on the date he was convicted of raping her, in which she indicates that she wanted to get drunk and have sex, and a text message days earlier in which she asked if he would give her alcohol in exchange for money and sex. (SCV Rec. 22, 41–42.) He further argues that the victim's ability to recollect details of the evening, as evidenced in her statements to the forensic nurse examiner the next day, undermined any assertion that she was "mentally incapacitated or physically helpless," as required for his rape conviction. Va. Code. § 18.2-61. Second, as it relates to his other convictions, he contends that he did not know that his victim was a minor and instead believed that she was at least eighteen years old, based primarily on her representations in social media accounts. (*See* SCV Rec. 36–37.)

---

[5] Diamond was advised of his obligation to register as a sex offender, however, and he twice told the court that he understood. (SCV Rec. 267, 270.)

7

Significantly, Diamond does not allege that this information was not produced in discovery or was unknown and/or unavailable to him and his counsel at the time of his guilty pleas. Thus, it is not "new" evidence. But even if it could be considered "new" evidence, none of it overcomes the evidence that the state indicated it could have presented, which included that the defendant had sex with a 15-year-old girl when he was 24 years old, had given her wine and tramadol, and then had recorded having intercourse with her on his phone. She reported an assault and rape to the police the next day. In the report that Diamond relies on to show that the victim remembered events of the night, it is true that she says she "was pressured into drinking," which is contradicted to some degree by her texts referenced above. It is also true that she remembered a lot about what happened, at least in the early part of the evening. (SCV Rec. 26.) But some portions of her statement affirm her incapacity. For example, she states that after Diamond put a pill in her drink and she asked what it was, he told her a muscle relaxer and then later a pain pill. She later asked him why he was putting stuff in her wine, and he said it was "none of [her] business." She then saw him put "other stuff in [her] glass" and after about 20 minutes, she began to feel "really dizzy." (*Id.*) She remembered performing oral sex on him and having sex with him twice, and remembered that he was recording the sex and taking pictures of her, but she did not provide any more details as to that time period. (*Id.*; *see also* SCV Rec. 30 (victim's statement the next day that she does not remember details of the sexual encounter).) When her blood and urine were tested from the next morning, Tramadol was found in both, and a portion of a Tramadol tablet was recovered from Diamond's home.

According to the prosecutor, the Commonwealth also would have presented the recordings at trial, which consisted of two clips that are about a minute long each. There were lights on in the room, and so the video clearly showed what was happening. The prosecutor stated that the videos showed that the victim "is not physically functioning properly. [Her] eyes

8

are barely open; she's not talking clearly; she's got slurred speech. She can barely lift her own hands and arms about; her legs were moved by the defendant, not herself. And she doesn't undress herself; the defendant does." (SCV Rec. 265–66.) Nowhere does Diamond dispute this description of the recordings. Instead, he affirmed that the evidence, including the description of the video, "would be the Commonwealth's evidence." (*Id.* at 267.)

Additionally, there is some evidence that Diamond might have known the victim was under eighteen. This includes his recorded denials to police when they first interviewed him, at which point he said he could not remember who he was with the night before, denied administering any pills, and denied any sexual contact. Evidence of knowledge of her age also is reflected in his reported comment to her the next morning that he wouldn't put the pictures or videos on the internet "because he would get arrested." (*Id.* at 266.)

The evidence he relies on now for actual innocence must be considered not only in light of all the evidence but also in conjunction with Diamond's clear admission of guilt in pleading guilty. *Cf. United States v. Lemaster*, 403 F.3d 216, 221–22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements."). Moreover, the Commonwealth's evidence, described above, demonstrates substantial evidence of his guilt.

When compared to that evidence, Diamond's evidence concerning the victim's social media accounts and text messages, as well as her ability to recall portions of the night's events, does not significantly call into question his guilt. In short, Diamond has not presented any new, reliable evidence in his habeas petition such that no reasonable juror would have found him

9

guilty beyond a reasonable doubt.  He thus cannot overcome the time bar to his petition on the grounds of actual innocence.

Because Diamond has not plausibly alleged a basis for excusing his untimely filing, the court concludes that his petition is time barred.  The court will grant respondent's motion to dismiss Diamond's petition (Dkt. No. 10) and dismiss the petition as untimely filed.

An appropriate order will be entered.

Entered: September 19, 2019.

/s/ Elizabeth K. Dillon
Elizabeth K. Dillon
United States District Judge